**Helen Patch v. Thomas E. Baird and Baird Associates, Inc.**

[435 A.2d 690]

No. 130-80

Present: **Barney, C.J., Larrow, Billings, Hill and Underwood, JJ.**

Opinion Filed August 14, 1981

*Black & Plante, Inc.,* White River Junction, and *Garfield H. Miller* (On the Brief), Norwich, for Plaintiff.

*McCarty & Rifkin, P.C.,* Brattleboro, for Defendants.

**Barney, C.J.** This is a trespass suit, with the defendant justifying passage over plaintiff's land on the basis of a prescriptive easement and two deeded easements. The trial court recognized one of the deeded easements, confirmed the right of way by prescription, denied the trespass claim, and awarded the defendants further rights that will be dealt with separately in the opinion. It dismissed all other claims with prejudice. Both sides have appealed.

The defendant Thomas Baird is a stockholder and president of the defendant corporation, Baird Associates, Inc., which operates a plumbing and heating business. Its premises adjoin and are in the rear of the plaintiff's lot, which fronts on a public way, Bridge Street. Access from the premises of the defendant to Bridge Street has, for many years, been accomplished by travel along the northeasterly boundary of the plaintiff's property across the width of Mrs. Patch's lot onto the street. This is the only access to the business property. Back in 1916, an undefined right of way servicing the property now owned by the defendants over the land now held by the plaintiff was established in a recorded deed. A deed in 1950 set out a right of way over the same servient premises that, in essence, defined the way as twenty feet wide as measured from the northeasterly boundary of the plaintiff's parcel, and running from the defendants' land along the plaintiff's boundary to Bridge Street.

The dispute arises from the fact that the access to defendants' premises as travelled diverges from the granted right of way further onto plaintiff's land, especially where it comes out onto Bridge Street. In places this intrusion is as much as six feet and is set off by the fact that it has been paved.

The paved driveway was put in by the Town of Springfield about 1950 at the time of the installation of water and sewer lines which run under the paved driveway. This paved way is about fourteen feet wide, and its course is directed by a curb-cut in the sidewalk edging Bridge Street. The cut is positioned so that in that area the driveway extends about six feet further onto the plaintiff's lot than the limits of the twenty-foot right of way. The use of the twenty-foot right of way is also obstructed, at the Bridge Street end, by a power pole with a guy wire which closes off a little over six feet of the outer edge of the right of way.

These obstacles and the course of the paved driveway have determined the location of use since at least 1950. The extent of that usage, as evidence, is the basis of the defendants' claim of prescriptive right, and the trial court concurred in that claim.

■ ■ The elements of a claim of prescriptive right are very much like those for adverse possession, *Abatiell* v. *Morse,*

115 Vt. 254, 258, 56 A.2d 464, 466 (1948); that is, the use must be open, notorious, continuous for the requisite period (in this case 15 years under 12 V.S.A. § 501), and hostile. *Russell* v. *Pare,* 132 Vt. 397, 401, 321 A.2d 77, 81 (1974). The elements of adverse use are not always expressed in the cases in the same language, see, e.g., *Spencer* v. *Lyman Falls Power Co.,* 109 Vt. 294, 302, 196 A. 276, 279 (1938), and confusion sometimes results. It is essential to test the claim according to its nature and purpose, as well as with the law's intent in mind.

In this case the only element relating to a prescriptive easement that is challenged on appeal by the plaintiff is the element of "hostility." One of the problems of language, seldom appreciated, is that it is almost crudely imprecise even though most of us view it as exact and definite. Unfortunately, every word used in a descriptive way carries with it some quality derived from other usage that may lend an unwanted modifying quality to the description. This is above and beyond the infinite variations in subjective views of the word's meaning. See *Latchis* v. *State Highway Board,* 120 Vt. 120, 123, 134 A.2d 191, 194 (1957).

■■ Here we have words like "hostile," "adverse," "exclusive," and "nonpermissive." All of these terms contain the thread of a common idea that the use of the right of way is not based on a consensual privilege given by the owner and recognizing his right to forbid such use, but rather based on a claim of a right to use the way as a limitation on the ownership of the holder of the underlying fee and without regard to permission. Thus, the "adverse" or "exclusionary" aspect required of evidence supporting a claim for a right of way by prescription relates to a contesting or challenging of a right in the owner of the fee to prohibit the use of the crossing, and contesting the existence of any right to give permission to the use. "Exclusion," in the ordinary case of adverse possession, relates to challenging the owner's right to use the land at all, and is evidenced by enclosing or fencing the land, for example, or preventing the fee owner from going on or using the land.

■■ The nature of a right of way is such that travel or usage as access is encouraged, and the notion of barring or

fencing off, although sometimes a part of the meaning of "exclusion" for adverse possession, is not appropriate here. Therefore, travel upon the right of way by the fee owner does not necessarily negate the "adverse" or "hostile" nature of the claimant. That nature is evidenced, at least in part, by usage without permission or against permission and by resistance to obstruction.

The same is true of the rule as to adverse possession relating to general public use of the land. The right of ownership in fee includes the right to exclude others, but if the claimant is merely one of the general public with access to the land, and does not himself attempt to exclude others, he has not evidenced a claim of right to the land as against both the fee owner and the other users. The situation is different, however, where a right of way is claimed. Evidence of general public use does not negate the "adverseness" requirement, but, in the absence of any other evidence of a claim of right as against the owner in fee, it may raise a presumption that the use is permissive. As might be expected, the effect of any such presumption is dissipated with the introduction of any evidence that the use is claimed against the rights of an owner in fee. *Begin* v. *Barone,* 124 Vt. 421, 423, 207 A.2d 252, 254–55 (1965).

[10] A review of the evidence in this case in the light of these principles and the issues raised discloses that the conclusion of the court below that the necessary "adversity" had been established is supportable. The contentions of the plaintiff that failure to bar the owner in fee from using the right of way and the usage of the access by the general public are not availing in attempted derogation of the prescriptive right, and, as *Begin* holds, the presumption of permission is ousted by the supportable finding of adversity.

In connection with the circumstances generating this litigation, both sides placed curb-like obstructions on the ground in connection with the use of the right of way. First, in May, 1979, the defendants put railroad ties parallel to the paved driveway but some distance from its edge and on plaintiff's land. When the defendants refused to remove them, the plaintiff had them taken away. The plaintiff, after the limits

of the twenty-foot right of way were surveyed, then had cement curbings or lintels installed along that line, in the middle of the paved driveway. Since trucks could then no longer use the paved way or get to the defendant's place of business, a tractor was used by the defendant Thomas Baird to remove the lintels. The trial court found that there was no evidence of harm supporting the recovery of damages, under the circumstances, against either party. Since the burden of justifying such recovery was not sustained, the judgment of the court in not awarding damages on behalf of either side will be affirmed here. *Frost* v. *Tisbert*, 135 Vt. 345, 346, 376 A.2d 748, 749 (1977).

The defendants, on cross-appeal, contend that the court erred in not finding the existence of a second right of way, namely, the one specified in the 1916 deed. That deed merely recited a general right of way over the servient estate, without defining or limiting it. In such a case the owner of the easement is "entitled to a convenient, reasonable, and accessible way, having regard to the interest and convenience of the owner of the land as well as their own." *Lafleur* v. *Zelenko*, 101 Vt. 64, 70, 141 A. 603, 605 (1928). The owner of the servient estate initially has the right to designate the location of the easement. *Id.* at 70, 141 A. at 606. "If he fails to do so, the person entitled to the right of way may select a suitable route, having regard for the interest and convenience of the owner of the servient estate." *Id.* at 71, 141 A. at 606. The defendants, as claimants, had the burden of proving where the easement was located. See *Nelson* v. *Bacon*, 113 Vt. 161, 168, 32 A.2d 140, 144 (1943). In this case, however, they did not submit any evidence establishing the boundaries of the easement. They submitted all of their evidence in relation to the location of the prescriptive easement. They therefore did not meet the burden of establishing their claim to the 1916 easement as a separate right of way. There was no error.

In one particular, however, the judgment below cannot be supported. The judgment order properly authorizes snowplowing, road repair and maintenance in connection with the easement. *Walker* v. *Pierce*, 38 Vt. 94, 98 (1865). It also granted a right to encroach westerly on land of the plaintiff, beyond the edge of the paved driveway. But the evidence does

not sustain the existence of any prescriptive right to do so. Since the measure of the prescriptive right depends on evidence of a history of usage over the necessary period, *Dennis v. French,* 135 Vt. 77, 79–80, 369 A.2d 1386, 1388 (1977), with no other authorization shown, the judgment order is, by its grant of encroachment, even though described as temporary, too broad and must be amended.

*The judgment order in the above-captioned case is amended in paragraph two by placing a period after the word "operations" and deleting the remainder of the sentence. As so amended, the judgment is affirmed. Each party to bear his own costs in this Court.*